UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EDISON QUITO,                                              **FIRST AMENDED COMPLAINT**

                                                          **16 cv 3915 (PGG)**
                                                          **ECF Case**

                              Plaintiff,

                    vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
FRANCES BRUNNER, FRANCES ARIUS,
MICHAEL ROOS, and JOSHUA GENITA,                          **JURY TRIAL DEMANDED**
in their individual and official capacities,

                              Defendants.
-----------------------------------------------------------x

Plaintiff Edison Quito, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the unlawful imprisonment and malicious

prosecution of Edison Quito ("Plaintiff"), who was seeking police assistance one night in

Harlem when the individual defendants arrested him and filed false charges against him.

Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983")

against the individual defendants for unlawful imprisonment, malicious prosecution, and

failure to intervene, and a *Monell* claim against the City of New York for the same

constitutional violations.  Additionally, Plaintiff asserts analogous claims under New

York Law against the individual defendants, and against the City of New York under the

doctrine of *respondeat superior*.  Plaintiff seeks compensatory and punitive damages,

costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   Plaintiff Edison Quito is a resident of Harlem, New York City, New York.

7.   The individually named defendants Police Officer Frances Brunner (Shield # 12346) ("PO Brunner"), Police Officer Frances Arius (Shield # 1926) ("PO Arius"), Police Officer Michael Roos (Shield # 12208) ("PO Roos"), and Police Officer Joshua

Genita (Shield # 13825) ("PO Genita") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.     On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 32nd Precinct.

9.     Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2015NY029007.  At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on May 2, 2016.

13.     This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.     On the evening of November 7, 2014, Plaintiff attended a social gathering in the Bronx where he played Bingo with family members.

15.     In the early morning hours of November 8, 2014, around 2:00 AM, Plaintiff and his girlfriend took a taxi home from the Bronx.

16.     After their taxi dropped them off, they walked toward their apartment at 351 St. Nicholas Avenue, in Harlem, New York City.

17.     As they walked, Plaintiff and his girlfriend, Michelle Ordonez ("Ms. Ordonez"), were having an argument because she wanted him to go home while he wanted to stay out.

18.     Plaintiff saw a police car nearby, parked on the corner of 128th Street and St. Nicholas Avenue, and he thought he could receive the help of the police officers inside the car, hoping the officers could help pacify the argument.

19.     Plaintiff approached the police car and tried to signal for help, but he wouldn't get a chance to explain what he wanted.

20.     As soon as the police officers in the car – the individual defendants – took note of Plaintiff, they emerged from the cruiser, rushed at Plaintiff, pushed him against a fence, and placed handcuffs on him.

21.     Ms. Ordonez said to the officers, "What are you doing?  He was trying to ask you for help!"

22.     One of the male defendants proceeded to search Plaintiff, taking out Plaintiff's wallet and around $400 in cash from Plaintiff's pockets.

23.     That same male officer then asked Plaintiff, "Why do you have so much money?  Are you a drug dealer?"

24.   Plaintiff denied being a drug dealer; he had earned that money legitimately through his work in construction.

25.   One of the male officers handed Plaintiff's wallet to PO Arius, who checked if Plaintiff had any warrants.

26.   When Plaintiff asked to be let go because he had done nothing wrong, one of the male officers told him to "shut up."

27.   PO Brunner, meanwhile, approached Ms. Ordonez and asked if Plaintiff had assaulted her.

28.   Ms. Ordonez unequivocally denied any assault or other crime by Plaintiff against her.

29.   But PO Brunner did not want to hear this denial and urged Ms. Ordonez to say that Plaintiff committed an act of violence against her.

30.   When Ms. Ordonez again denied any act of violence against her, PO Brunner lied and said that Ms. Ordonez's lips looked swollen.

31.   Ms. Ordonez responded that she simply has thick lips; her lips were not swollen, bruised, or injured in any way.

32.   At no point did Plaintiff do anything unlawful in front of the individual defendants, nor was anything unlawful recovered from him.

33.   The individual defendants then put Plaintiff in their cruiser and transported him to the 32nd Precinct.

34.   At the Precinct, Plaintiff was booked and processed, photographed and fingerprinted, searched and detained.

35.     At the Precinct, the individual defendants collectively concocted a false narrative about Plaintiff's actions that night, inventing the fact that he was trying to assault Ms. Ordonez, that that they successfully blocked him from doing so, and fabricating statements that Plaintiff never made, such as: "I'm going to beat you, you cheating bitch."

36.     After a few hours at the Precinct, Plaintiff was transported to Central Booking at 100 Centre Street in lower Manhattan.

37.     Plaintiff was arraigned in the late evening of November 8, 2014 on Docket Number 2014NY084406.

38.     Plaintiff was charged with the misdemeanor of Menacing in the Third Degree and the violation of Harassment in the Second Degree.

39.     The Criminal Court Complaint was based on the false allegations of PO Brunner, who claimed she "observed the [Plaintiff] advance towards [his girlfriend]…while holding his arms outstretched and stating in substance 'I'm going to beat you, you cheating bitch.'

40.     The Complaint contained the additional false allegations that Ms. Ordonez "was crying and yelling at the defendant to stop," and that Plaintiff had to be "restrain[ed]" to "keep him from physically contacting" Ms. Ordonez.

41.     Plaintiff was released on his own recognizance, but he was ordered to return to Criminal Court, Part D, at 100 Centre Street.

42.     Plaintiff appeared in Criminal Court on five dates before the prosecution was finally dismissed on October 5, 2015 pursuant to New York speedy trial law.

43.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

44.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

45.     There is a systemic failure by the City to identify, discipline, and supervise NYPD officers who fabricate criminal charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

46.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational and destructive custom and policy that fosters a culture of mendacity in the NYPD.

47.     The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to weed out dishonest officers, even when their mendacious behavior abrogates the constitutional rights of citizens.

48.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But NYPD officers usually face only minor discipline or no discipline whatsoever for making false statement on court documents.

49.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court

documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

50.     In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

51.     Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

52.     As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

53.     The Commission analyzes false statements in official criminal court documents, including supporting depositions, criminal court complaints, summonses, and affidavits. False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent people.

54.     Despite the importance of appropriately identifying and punishing officers who

make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.  Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

55.     For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.  Such findings – which expose the gap between the NYPD's false statement policy and practice – can be found in virtually every Annual Report issued by the Commission.

56.     Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification. And there is no sign of improvement.

57.     In the specific context of fabricated court documents that falsely accuse innocent people of wrongdoing, the Commission has regularly found grossly inadequate punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

58.     To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.  In the 2010 Annual Report, for instance, the Commission identified only ten IAB cases that included allegations of making an official false statement.

59.     The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know the system well enough to lie and get away with it.

60.     The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

61.     Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

62.     In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

63.     Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

64.     Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

65.     Through the data cited herein along with well-publicized events (prominent civil rights lawsuits, ticket-fixing, and a secret quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.  By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

66.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

67.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

68.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

69.     While the vast majority of police officers are good honest people, they must operate in a police culture so truth-sick and cynical that their morale is crushed, knowing that roguish behavior is rewarded, trust is thwarted, and virtue is perverted.  As a result, the safety, welfare, and liberty of every citizen are threatened.

70.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

> a.  Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

b.   Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

### FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

71.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

72.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

73.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

74.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

75.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SECOND CLAIM

**Unlawful Imprisonment Under Section 1983**

76.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

77.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against

unreasonable searches and seizures, specifically his right to be free of unlawful imprisonment.

78.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without privilege or consent, and without taking Plaintiff to the criminal court judge with no undue delay.

79.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

80.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

81.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

82.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

83.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

84.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

85.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

86.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

87.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Municipal Liability Under Section 1983

88.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

89.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

90.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

### False Imprisonment under N.Y. State Law

91.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

92.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without privilege or consent, and without taking Plaintiff to the criminal court judge with no undue delay.

93.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SECOND CLAIM**

**Malicious Prosecution Under N.Y. State Law**

94.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

95.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

96.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**THIRD CLAIM**

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

97.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

98.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

99.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, confined him, and initiated false charges against him.

100.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)

101.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

102.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

103.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

104.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

105.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

106.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Respondeat Superior Under N.Y. State Law

107.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

108.    Defendant City is the employer of the individual defendants.

109.    Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment and malicious prosecution committed by the individual defendants against Plaintiff.

110.    As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.    An order awarding compensatory damages for Plaintiff Edison Quito in an amount to be determined at trial;

b.    An order awarding punitive damages in an amount to be determined at trial;

c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.    Such other and further relief as this Court may deem appropriate.


DATED:    September 30, 2016            _____s/_____
New York, New York            CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
Attorney for Edison Quito